**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberto Salcido-Romo, et al., | No. CV-16-01639-PHX-DLR |
| Petitioners, | **ORDER** |
| v. | |
| Southern Copper Corporation, | |
| Respondent. | |

Before the Court is Petitioners Alberto Salcido-Romo, Francisco Ramón Miranda, Francisca Garcia-Enriquez, and Oscar Ramírez-Gamez's Application for an Order Granting Leave to Issue Subpoenas for the Taking of Discovery Pursuant to 28 U.S.C. § 1782 (Application) (Doc. 1). The Application is fully briefed, and the Court heard oral argument on May 26, 2016. For the following reasons, Petitioners' Application is granted in part.

## BACKGROUND

Petitioners are residents of agricultural communities near the Sonora and Bacanuchi Rivers in Sonora, Mexico (Doc. 1-1 at 24, ¶ 1). Respondent Southern Copper Corporation (SCC) is a copper mining company incorporated in Delaware and headquartered in Phoenix, Arizona (*Id.* at 31). SCC owns over 99% of Minera Mexico, S.A. de C.V. (Minera), a Mexican mining company (*Id.* at 35). Minera, in turn, owns 99.99% of Operadora de Minas e Instalaciones Mineras, S.A. de C.V. (Operadora),

another Mexican mining company that operates the Buenavista del Cobre (BVC) mine in Cananea, just north of Petitioners' communities (*Id.* at 28, ¶ 12).

On August 6, 2014, over 10 million gallons of toxic mining waste spilled from a BVC copper leaching plant into the Bacanuchi River, a tributary of the Sonora River. The spill contaminated nearly 120 miles of the Sonora River and affected over 24,000 people, including Petitioners (*Id.* at 24, ¶ 1; Doc. 1 at 3). In 2015, Petitioners filed seven writ of *amparo* actions regarding the spill in Mexican courts (Doc. 1-1 at 24, ¶ 2).[1] The writ of *amparo* actions are against various governmental entities and, in two cases, against BVC (Doc. 13-1, ¶ 2). Petitioners also plan to file an environmental lawsuit against BVC and Operadora, for which they currently are conducting a pre-suit investigation (Doc. 1-1 at 26, ¶ 4; Doc. 13-1, ¶ 12). Petitioners seek this Court's assistance in obtaining certain documents and testimony from SCC for use in their writ of *amparo* proceedings and forthcoming environmental lawsuit (Doc. 1).

## LEGAL STANDARD

Upon application by any interested person, 28 U.S.C. § 1782(a) allows a district court to order a person residing within its district to produce documents or give testimony for use in a foreign proceeding. "There are thus three threshold requirements for compelling discovery under § 1782: (1) the person from whom discovery is sought must 'reside' or be 'found' in the district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an 'interested person.'" *In re Godfrey*, 526 F. Supp. 2d 417, 418 (S.D.N.Y. 2007). If these requirements are met, "[t]he statute authorizes, but does not require," the district court to compel the requested discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). In exercising its discretion to grant or deny a request under § 1782, the court considers several factors, including: (1) whether the "person from whom discovery is sought is a participant in the

---

[1] A writ of *amparo* is a type of constitutional action in which a claimant seeks a judicial order compelling a government or corporate entity to either take or cease a particular action. The proceeding is analogous to a request for injunctive relief in the United States' judicial system (Doc. 1-1 at 24, ¶ 2).

- 2 -

foreign proceeding;" (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the request is an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id.* at 264-66.  The court may also consider whether the requested materials are located outside the United States.  *See Four Pillars Enter. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002).[2]  In weighing these factors, the court must be mindful of "the twin aims of the statute:  providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistant to our courts." *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (internal quotations and citation omitted).

## **DISCUSSION**

### A. Statutory Requirements

Petitioners meet the statutory requirements for invoking § 1782.  They are interested persons because they are parties to the pending writ of *amparo* actions and will be parties in the forthcoming environmental lawsuit.  Petitioners seek documents and testimony for use in these proceedings, which are being conducted in Mexican courts.  Finally, Petitioners request discovery from SCC, a corporation headquartered in this District.  Accordingly, the Court is authorized to grant Petitioners' request if it deems the request appropriate and if doing so will serve the twin aims of the statute.

---

[2] Whether extraterritorial discovery is categorically barred under § 1782 is the subject of disagreement among federal courts. *Compare In re Gemeinschaftspraxis*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("[A]bsent any express statutory language, the location of the documents at issue should at most be a discretionary consideration . . . .") *with In re Godfrey*, 526 F. Supp. 2d at 423-24 (concluding that § 1782 should be limited to discovery within the United States) *and In Re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006) ("[Section] 1782 does not authorize discovery of documents held abroad.").  The Ninth Circuit has not addressed whether § 1782 is territorially limited, but has at least endorsed considering the location of the requested materials as a discretionary factor. *See Four Pillars*, 308 F.3d at 1079-80; *Astronics Adv. Electronics Sys. Corp. v. Lufthansa Technik AG*, 561 F. App'x. 605, at *606 (9th Cir. 2014).  Absent contrary guidance from the Ninth Circuit or the Supreme Court, this Court will not impose requirements that are not found within the statutory text and, instead, will consider the extraterritorial location of any requested documents as a discretionary factor.

**B. Discretionary Factors**

Two of the discretionary factors favor Petitioners. First, SCC is not a participant in any of the foreign proceedings. Five of the seven writ of *amparo* actions are brought only against Mexican governmental entities (Doc. 13-1, ¶ 2). Although two of its Mexican subsidiaries—BVC and Operadora—are parties or prospective parties to some of the Mexican proceedings, SCC is not. Moreover, according to Mexican attorney Luis Miguel Cano, who submitted two declarations in support of Petitioners' Application, SCC "will not and cannot be a party to the environmental lawsuit," because Mexican "environmental responsibility law does not permit . . . a lawsuit against a parent corporation of the responsible entities," (*Id.*, ¶ 12). Second, Petitioners have adequately shown that the Mexican proceedings are still in the proof-gathering stages and that the Mexican courts are receptive to judicial assistance from the United States. Cano explains that "[u]nder the *amparo* system, judges are willing to admit a wide variety of evidence brought to them by a party and obtained by other means," and that "in each of the *amparo* actions . . . the litigation is at a point in which [Petitioners] can still present evidence to the tribunal," (*Id.*, ¶¶ 3-4). Regarding the environmental lawsuit, Cano states "the general rule is that the bulk of evidence supporting a case must be presented when the lawsuit is filed," (*Id.*, ¶ 8). Because the environmental lawsuit has not yet been filed, it follows that Mexican courts will be receptive to evidence gathered now.

The remaining factors, however, caution against granting the full extent of Petitioners' request, especially given the likely location of some of the requested materials. Petitioners' proposed Request for Production of Documents (Document Request) and Notice of Rule 30(b)(6) Deposition (30(b)(6) Notice) define "SCC" to include "any company directly or indirectly controlled by, or under common control with SCC," including "all operating companies, joint ventures, divisions and/or units, controlled directly or indirectly by SCC," (Doc. 1-1 at 6, 17). Additionally, the Document Request and 30(b)(6) Notice define "Possession, Custody or Control" to include the possession, custody, or control of SCC's subsidiaries (*Id.* at 5-6, 18). Minera,

Operadora, and BVC fall under these broad definitions. According to the declaration of Gregory Evans, SCC's attorney, "[a]ll of the documents requested in the Document Requests relate to events and communications that look place entirely in Mexico," (Doc. 12-2, ¶ 4). Based on his knowledge of SCC's corporate structure,[3] Evans states that "all or nearly all documents responsive to the Document Requests would be located in Mexico and would be held by Operadora . . .," (*Id.*). Moreover, Evans states that the 30(b)(6) Notice would require SCC "to produce a representative of SCC, or its subsidiaries, that can testify as to events that took place entirely in Mexico," and that based on his knowledge of SCC's corporate structure, "it is likely that SCC would have to designate a corporate officer of Operadora . . . . That person would likely be a Mexican national," (*Id.*, ¶ 6). Petitioners themselves suggest that at least some of the materials they have requested are located extraterritorially (Doc. 13-1, ¶ 9 ("[T]he documents requested are not *all* in the possession of Operadora . . . ." (emphasis added)). In its current form, Petitioners' Application likely seeks some materials located outside the United States, and potentially testimony from a Mexican national. This weighs against granting Petitioners' full request.[4]

Further, to the extent some of the requested materials are in the custody of Operadora or BVC, Petitioners have not adequately explained why they should be permitted to circumvent Mexican proof-gathering restrictions and obtain the information indirectly from SCC in the United States. Cano informs the Court that "both BVC and Operadora have appealed [Petitioners'] efforts to seek information from the government regarding any alleged environmental remediation that took place after the August 6, 2014 spill," (Doc. 13-1, ¶ 10; *see also Id.*, ¶ 15 ("BVC and Operadora are both actively

---

[3] Petitioners suggest that Evans' declaration in unreliable because it is based solely on his knowledge of SCC's corporate structure, (Doc. 13 at 4, 7), yet Cano likewise relies on his knowledge of SCC's corporate structure to contend that some of the requested materials are in the possession of SCC, (Doc. 13-1, ¶ 9).

[4] Indeed, because Petitioners' Application defines SCC to encompass Minera, Operadora, and BVC, it does not seek materials solely from a person residing in this District; SCC's Mexican subsidiaries are not headquartered here. Moreover, Operadora and BVC are parties to some of the Mexican proceedings.

- 5 -

appealing [Petitioners'] right to obtain certain information from government sources.")). Although Petitioners are taking steps to obtain some of this information through Mexican proof-gathering procedures, they do not explain why it would be appropriate for this Court to undermine that process, including any appeals by Operadora or BVC, by ordering production indirectly from SCC in the United States. That foreign proof-gathering procedures are more burdensome does not, alone, justify this Court's intervention. Moreover, although Cano states that he is "not aware of any mechanism by which a court would approve to conduct any investigations prior to the filing of the lawsuit similar to what is being asked of SCC in this Application," (*Id.*, ¶ 13), he does not explain why he cannot seek information from BVC through the Mexican courts in the context of the two writ of *amparo* proceedings to which BVC presently is a party, nor does Cano address the other Mexican proof-gathering mechanisms described by attorney Juan Carlos Bolaños Silva in his declaration submitted in support of SCC's opposition brief, (Doc. 12-1, ¶¶ 8-17, 19). In sum, these circumstances suggest that Petitioners' request might be motivated, at least in part, by a desire to circumvent less favorable or more onerous proof-gathering restrictions in Mexico.

Finally, SCC contends that Petitioners' discovery requests are unduly burdensome to the extent they require SCC to obtain materials possessed by its foreign subsidiaries for production in the United States. Specifically, Evans' explains:

> Responding to the Document Requests would be expensive and time-consuming. SCC would have to first obtain the cooperation of officers of its corporate subsidiaries and conduct searches for documents responsive to the thirteen separate categories listed in the Document Requests. SCC would then have to transfer any potentially relevant documents to the United States and engage U.S. attorneys to review documents, nearly all of which would be written in Spanish, to determine if any documents would be protected from production by U.S. discovery rules.

(Doc. 12-2, ¶ 5).[5] The Court agrees. *See Krestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362

---

[5] Notably, SCC does not argue that the discovery requests would be unduly burdensome if limited to materials possessed by SCC and located in the United States. Instead, during oral argument counsel for SCC suggested that SCC would be amenable to

- 6 -

F.3d 401, 402-03 (7th Cir. 2004) (reversing § 1782 order that required documents to be shipped from foreign jurisdictions to the United States, only to be returned again for use in the foreign proceeding); *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013) (same).

Petitioners suggest that the Court limit production to documents that are readily accessible to SCC employees in the United States, should it conclude that the extraterritorial discovery is inappropriate (Doc. 13 at 7-8, n.5). During oral argument, SCC indicated that it would be amendable to such a request. Accordingly, the Court will grant Petitioners' Application only to the extent it seeks materials that are readily accessible to SCC employees in the United States. The Court is mindful, however, that electronically stored information (ESI) presents special circumstances. During oral argument, the parties appeared to dispute the ease with which SCC could access ESI, and the manner in which the location of ESI should be determined. The Court lacks sufficient information about SCC's electronic storage and accessibility capability to craft an appropriate discovery order. Accordingly, the parties are directed to meet and confer regarding the production of responsive ESI, and to submit to the Court a joint proposed Document Request and a joint proposed 30(b)(6) Notice that are territorially limited.

**IT IS ORDERED** that Petitioners' Application, (Doc. 1), is **GRANTED IN PART** as explained herein.

//
//
//
//
//
//
//
//

---

cooperating with a request that is territorially limited.

- 7 -

      **IT IS FURTHER ORDERED** that the parties shall meet and confer and, within seven (7) days of the date of this order, submit to the Court a joint proposed Document Request and a joint proposed 30(b)(6) Notice that are territorially limited and that seek the production of responsive ESI consistent with this Order.

      Dated this 10th day of June, 2016.

                                                                                 Douglas L. Rayes
                                                                                 United States District Judge