**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

Alberto Salcido-Romo, et al., )
                               )   No. **CV-16-1639-PHX-DLR**
     Petitioners,    )
                               )
     vs.               )   Phoenix, Arizona
                               )   May 26, 2016
Southern Copper Corporation, )   1:29 p.m.
                               )
     Respondent.    )
_____ )

**BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**ORAL ARGUMENT**</u>

**APPEARANCES:**
For the Petitioners:
    Law Office of Lynn Coyle
    By: **Christopher Benoit,** Esq.
    2515 North Stanton Avenue
    El Paso, Texas 79902

For the Respondent:
    McGuire Woods
    By: **Gregory Evans,** Esq.
    Wells Fargo Center S Tower
    355 South Grand Avenue, Suite 4200
    Los Angeles, California 90071

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

─── **CV–16–1639–PHX–DLR – May 26, 2016** ───

1        (Proceedings begin at 1:29 p.m.)

2        THE CLERK:  Miscellaneous case number 16-0035,

3   Salcido-Romo and others versus Southern Copper Corporation, on

4   for oral argument.

5        Counsel, please announce for the record.                    13:29:43

6        MR. BENOIT:  Christopher Benoit for the applicants,

7   Your Honor.

8        MR. EVANS:  Good afternoon, Your Honor, my name is

9   Gregory Evans, I'm with McGuire Woods, on behalf of Southern

10  Copper Corporation.                                              13:29:53

11        THE COURT:  Good afternoon.

12        Okay.  We have oral argument on this matter.  Benoit,

13  it's your motion, it's your application.

14        MR. BENOIT:  Yes, Your Honor.

15        THE COURT:  Are you ready to go?                            13:30:02

16        MR. BENOIT:  Would you like me to move to the podium?

17        THE COURT:  Yes, please.

18        MR. BENOIT:  May it please the Court.

19        We are here in response to one incident that occurred

20  on August 6, 2014.  And it is not in dispute that on that date   13:30:17

21  10 million gallons of copper sulfate leached from a leaching

22  pond into the Bacanuchi and the Sonora rivers just about 30

23  miles south of here.

24        THE COURT:  Yeah, I've read your application, the

25  response and the reply and the affidavits, so you can go ahead.  13:30:33

CV-16-1639-PHX-DLR – May 26, 2016

1    MR. BENOIT:  Well, the question for the Court then,

2  Your Honor, is whether the applicants have satisfied the prima

3  facia requirements of 1782 to seek discovery from a U.S. based

4  company, and whether the respondent presented sufficient

5  evidence to refute our showing on the discretionary factors          13:30:47

6  under *Intel Corp*.

7    THE COURT:  Well, my first question, are there any

8  deadlines we're working under here?

9    MR. BENOIT:  Well, there is a -- there is not a

10  deadline in terms of the environmental lawsuit, we're still          13:30:57

11  within the statute of limitations.  As I mentioned, our clients

12  are currently doing their work to be able to put that case

13  together.

14    In regards to the amparo suits, I don't have an exact

15  date, but I do know that those are moving much quicker.              13:31:11

16  Probably within the year they will have the final hearings in

17  several of those.

18    THE COURT:  Okay.  So you're not concerned about the

19  statute of limitations in the other suit then?

20    MR. BENOIT:  On the environmental lawsuit?  No, we are          13:31:23

21  not, Your Honor.

22    THE COURT:  All right.  All right.  Go ahead.

23    MR. BENOIT:  In regards to the statutory

24  requirements -- well, before going into the statutory

25  requirements, I think it's important to mention the two twin        13:31:31

1    aims of the statute, which are to provide assistance to

2    international -- or litigation abroad and to encourage foreign

3    countries to do the same for our own citizens.

4          And we're not looking at a traditional forum non

5    conveniens or international comity analysis.                    13:31:47

6          In terms of the statutory requirements.  The first

7    statutory requirement, as you know, Your Honor, is that our

8    clients have to be interested persons.  I don't think that the

9    respondents have necessarily disputed that as of today.

10         The second is, of course, that the person, the          13:32:00

11   respondent, has to be residing here in this District.  And that

12   question of residence is really a question of corporate

13   personhood, where are they -- their headquarters, where are

14   they registered?  All of those are really not in dispute, and

15   they are here in Arizona.                                      13:32:16

16         THE COURT:  Well, but your discovery is asking for

17   matters that are located in the hands of a foreign subsidiary.

18         MR. BENOIT:  Well, we would argue that the

19   evidentiary -- the evidentiary record in front of the Court is

20   thin in terms of proving that.                                 13:32:38

21         But even if that's the case, 1782 is regularly

22   utilized in foreign litigation dealing with foreign matters.

23   But the question in terms of the statutory requirements is

24   really, where is the company located --

25         THE COURT:  Well, let me refine my question then.        13:32:53

1    How can you say you're seeking discovery from someone

2    located in the District when your discovery requests define SCC

3    to include its foreign subsidiaries?

4    MR. BENOIT:  Well, the question in terms of residence

5    is, again, not where the documents are located, it's whether        13:33:12

6    the person or the company in District has control, possession

7    and custody over the subsidiaries in this case.  And we're

8    looking at regular rules under the Rules of Civil Procedure,

9    regular discovery notions of what is possession, custody and

10   control.                                                           13:33:32

11   But, again, in terms of the statutory -- I think that

12   goes more to some of the discretionary factors.  In terms of

13   the statutory requirements, even *Nokia* and *Godfrey*, which the

14   respondents mentioned in their brief, were looking at cases

15   where the corporation did not have a headquarters, did not have    13:33:44

16   an office, and was not registered in the state where it was

17   located.

18   So it's more of a question of corporate personhood, at

19   least at this point of the analysis, rather than where the

20   documents are located.                                            13:33:57

21   THE COURT:  Have you made any efforts to obtain these

22   materials from the Mexican subsidiaries through the Mexican

23   courts?

24   MR. BENOIT:  Yes, Your Honor.  There's been numerous

25   efforts that have been made.  As we mentioned, about -- over       13:34:08

1   10,000 documents of materials have been obtained through the

2   government, through their equivalent of the FOIA Act down in

3   Mexico.  Some of those are being stonewalled by some of the

4   subsidiaries in question through those avenues.

5           But that's -- those are things that our client has          13:34:26

6   done, again, in preparation for the environmental lawsuit,

7   because there are no avenues to do so through the courts at

8   this time.

9           And in terms of the amparo litigation, again, it is

10  extremely limited -- the concept of discovery in those          13:34:40

11  constitutional courts it's very limited.  That does not mean

12  that those courts will not accept the documents that we obtain

13  here, but it does -- that is just a factor of a civil law

14  system, and one that *Intel Corp.*, the Supreme Court in *Intel*

15  *Corp.* addressed in footnote 12 and 15, stating that the          13:34:57

16  directors of 1782 were quite aware of circumstances that civil

17  law systems generally do not compel production of documentary

18  evidence in those case.  And that -- in terms of the civil

19  lawsuit, documentary evidence is generally submitted as an

20  attachment to the pleadings.          13:35:15

21          So that's really the kind of legal framework that

22  we're dealing with.

23          THE COURT:  Okay.  So going back to the environmental

24  lawsuit, what's your time frame on that?  When do you plan on

25  filing it?          13:35:27

CV-16-1639-PHX-DLR — May 26, 2016

1       MR. BENOIT:  My understanding is that they're trying

2   to get this lawsuit filed within the year, on the environmental

3   lawsuit.

4       THE COURT:  Okay.  And the six -- is it pronounced

5   amparo?                                                        13:35:39

6       MR. BENOIT:  Amparo, our constitutional --

7       THE COURT:  What's the status of those?  Where are

8   they now?

9       MR. BENOIT:  Those are in what we would consider kind

10  of preliminary stages of motions to dismiss, I think would be   13:35:46

11  the equivalent.  And so the evidentiary stage in those cases is

12  still forthcoming.

13      THE COURT:  Okay.  I think the affidavit from the

14  Mexican attorney that you filed says that they're still taking

15  evidence?                                                      13:36:02

16      MR. BENOIT:  Yes, Your Honor.  My understanding --

17  again, I'm not a Mexican lawyer.  But my understanding is that

18  they will take evidence up until the final hearing.

19      THE COURT:  And do you have any reason to believe that

20  SCC is in possession of the discovery you're requesting?       13:36:13

21      MR. BENOIT:  Yes, Your Honor.  We believe that SCC

22  has -- and, again, the question of possession, custody and

23  control of communications and documents that we've referred to

24  in our request for production.  We have -- that's why our

25  attorneys filed this, or asked us to file this.  Because that   13:36:30

1    information is information that he will not be able to access

2    in Mexico.

3            THE COURT:  Other than having to go down and ask their

4    subsidiaries to get that information for them, do you have any

5    reason to believe they currently have it in their possession?    13:36:41

6            MR. BENOIT:  Well, in terms of -- I guess the

7    question, in terms of going down to their subsidiaries,

8    it's -- we don't know.  And I think our declaration makes that

9    clear.  The question is one of custody and possession.  But, of

10   course, there's no way for our Mexican attorney to be able to    13:37:00

11   know where those documents are, what categories of documents

12   there are, other than those that we've requested.

13           And so I think that the -- the question of custody and

14   control is kind of where the courts have gone.  And really the

15   burden being on the respondents, and particularly in regards to  13:37:17

16   the third and fourth discretionary factors.  That's where this

17   concept of where the documents are located has gone to.

18   Because as the Court knows we're dealing with

19   electronically-stored information.

20           THE COURT:  Let me ask you this, you talk about          13:37:32

21   burden, the SCC has claimed it's burdensome.  Who has the

22   burden of proof of proving burdensomeness?

23           MR. BENOIT:  Yes, Your Honor.  The question has always

24   been kicked back to an analysis that would be similar to what

25   we would face in a motion to quash.  It has to be               13:37:48

1    particularized.  The respondent has that burden.  And the

2    evidence has to be particularized as to cost, expense and, of

3    course, resources, all of which we're familiar with in

4    litigation here.

5              And that -- all we have here is a conclusory statement          13:38:01

6    that it would be burdensome.  While at the same time in the

7    same statement from filing counsel, acknowledging that they

8    have control over the entities that they would have to obtain

9    the documents from.

10             THE COURT:  So your argument is they haven't met their          13:38:15

11   burden to prove burdensomeness?

12             MR. BENOIT:  In terms of the fourth factor, yes,

13   Your Honor.

14             THE COURT:  Okay.

15             MR. BENOIT:  I do believe that the respondents have           13:38:22

16   that burden.  And any court in a traditional domestic

17   litigation would -- I think would require more.  And the

18   federal rules, I think, require more.

19             THE COURT:  We've touched on this, but SCC is itself

20   owned by Grupo Mexico, a Mexican company; right?                        13:38:40

21             MR. BENOIT:  Well, it's a publically-traded company

22   with U.S. investors here under the purview of the SEC.

23             THE COURT:  Is there a reason you haven't sought these

24   documents from Grupo Mexico?

25             MR. BENOIT:  My understanding is that Grupo Mexico is          13:38:56

1 not voluntarily providing this documentation to our clients.

2 And that our Mexican attorney, again, as he stated, there's

3 no -- there's no mechanism for him to be able to go to them and

4 ask for these documents.

5      THE COURT:  Is Grupo Mexico named as a party in any of    13:39:10

6 the Mexican actions?

7      MR. BENOIT:  No, Your Honor.  In fact, in the

8 environmental lawsuit our Mexican attorney made clear to me,

9 and included in his declaration, that a parent company,

10 especially that far removed, could never be named as a litigant    13:39:24

11 under that law.

12      THE COURT:  All right.  And so in all six amparo

13 actions, SCC subsidiaries are named as parties?

14      MR. BENOIT:  No.  And that's actually a very important

15 point.  In fact, I believe it's seven at this point.  I may be    13:39:41

16 counting wrong.  But of the seven amparo or constitutional law

17 actions, there are only two that name a subsidiary, the rest

18 are actually -- have opposing parties being the Mexican

19 government, they are not actions again the subsidiaries.

20      It's similar to an injunctive case here essentially    13:40:02

21 asking for the government to give declaratory relief and to

22 create injunctive relief.

23      THE COURT:  But there are two where SCC subsidiaries

24 are named as, I guess, the defendants.

25      MR. BENOIT:  They -- well, they're named as third -- I    13:40:18

CV-16-1639-PHX-DLR — May 26, 2016

1  believe they're third party interested parties.  And it's

2  actually not the subsidiary that the respondent mentions in

3  their declaration, in Mr. Evans' declaration, it's a separate

4  one called Buenavista del cobre.

5          THE COURT:  Okay.  But it is a subsidiary of SCC?          13:40:34

6          MR. BENOIT:  I believe so.

7          THE COURT:  Okay.  And in the environmental lawsuit

8  when that's filed, there will be SCC subsidiaries named as

9  defendants probably?

10          MR. BENOIT:  I believe in that lawsuit it will be          13:40:47

11  Buenavista and Operadora, yes, two subsidiaries.

12          THE COURT:  Okay.  Let's assume that all the documents

13  you're seeking are in the possession of Mexican subsidiaries of

14  SCC.  What's the point of asking SCC to produce them?

15          MR. BENOIT:  Well, Your Honor, when we talk about          13:41:08

16  possession, again, I want to talk about it in the context of

17  electronically-stored information.  These companies all use the

18  same domain.  They all have access.  And so our question here

19  is, who has access to that information?

20          Our clients, again, will not be able to obtain those          13:41:21

21  documents through the litigation.  And on top of that they have

22  to present this evidence in the environmental lawsuit before

23  they actually go to court.  And so in that context there is

24  really no other way for them to obtain that kind of

25  documentation from the foreign subsidiaries.          13:41:38

─── **CV–16–1639–PHX–DLR – May 26, 2016** ───

1      THE COURT:  Is that not getting around the Mexican

2  law, though, by coming here to get -- obtain things you

3  couldn't otherwise obtain through the Mexican courts?

4      MR. BENOIT:  I'm sorry, I missed the first part of

5  your question.                                              13:41:51

6      THE COURT:  Is that not, in effect, trying to get

7  around the Mexican procedures and laws by coming here to try to

8  obtain the information you can't obtain down there from an

9  American entity?

10      MR. BENOIT:  No, Your Honor.  I think this is          13:42:03

11  precisely the situation the Supreme Court was facing in

12  *Intel Corp.*, which is, again, in a civil law system this is not

13  unique.  1782 has to be permitted in these cases.  And the

14  *Consorcio* case out of the Eleventh Circuit said the same thing

15  about civil law systems, that they will be receptive as long as  13:42:20

16  the Court will be receptive to receiving the documentation.

17  That's really the question, not necessarily whether there's

18  discoverability of that information.

19      And so it is -- again, here, I think both attorneys

20  have specifically said that the Court will accept this          13:42:35

21  information.

22      And in terms of the amparo actions, Mr. Bolano, the

23  respondent's attorney, said nothing in regards to -- to refute

24  our client's contention that they will accept and be receptive

25  to that information.                                            13:42:50

1          And so this is -- it's not a unique situation.  I

2    think the drafters of 1782 expected for this to be an avenue to

3    be used in countries where that's the posture of litigation.

4          THE COURT:  Okay.  Those are the questions I had.

5    Anything else you want to add?                                13:43:04

6          MR. BENOIT:  No, Your Honor.  If you have no other

7    inquiries, I will cede the rest of my time potentially for

8    rebuttal if that's needed.

9          THE COURT:  Okay.

10          MR. BENOIT:  And we ask, of course, that the Court      13:43:12

11    grant our application, or in the alternative that we be able to

12    have an opportunity to trim down or narrow the request.

13          THE COURT:  Okay.  And to trim down or narrow the

14    request, that would be -- I think you've suggested that they

15    would be required to produce whatever documents they have in   13:43:29

16    their possession without having to go down to any of the

17    subsidiaries to gather them.

18          MR. BENOIT:  Well, what's accessible to them.

19          THE COURT:  Okay.

20          MR. BENOIT:  I mean, I do want to make that            13:43:39

21    distinction because --

22          THE COURT:  Well, how would you frame the order if you

23    were to frame the order, trim down, as you've suggested?

24          MR. BENOIT:  I would say I think that what is

25    accessible to employees of SCC within their own -- again, I'm  13:43:51

1  really talking within an electronic framework, because for them

2  to be able to respond to the SCC and U.S. investors they

3  clearly have very specific information related to the incident

4  that we're talking about that they've related to their

5  investors.                                                        13:44:10

6          So I believe I would trim it down to talk about what

7  is accessible to SCC employees, the documents that are

8  accessible to them electronically.

9          THE COURT:  Okay.  All right.  Thank you.

10         MR. BENOIT:  Thank you, Your Honor.                       13:44:20

11         MR. EVANS:  Good afternoon, Your Honor.  Gregory Evans

12  on behalf of Southern Copper Corporation.

13         Based upon the grilling that my colleague just got, I

14  prepared a big PowerPoint presentation, but my instincts tell

15  me that it's not going to be very useful.  If you would like,   13:44:42

16  however, I can go through some of it to try and make some of

17  the points that we'd like to make this afternoon.

18         THE COURT:  Well, I've read everything.  If there's

19  something in there that's not included in what was --

20         MR. EVANS:  Well, let me just highlight for the Court    13:44:56

21  to the extent that the corporate structure has been muddled in

22  all of the pleadings that have been filed.

23         Southern Copper Corporation is, in fact, a U.S.

24  publically-traded company.  It is the parent company to Minera

25  Mexico, and then to Operadora.                                   13:45:16

CV-16-1639-PHX-DLR – May 26, 2016

1    THE COURT:  Let me tell you how I have it diagrammed.

2  I've got -- I have Grupo Mexico, Americas Mining Corporation,

3  and then Southern Copper Corporation.  And then a subsidiary of

4  Southern Copper is Minera Mexico, and then a subsidiary of

5  Minera Mexico is Operandora de Minas, et cetera.      13:45:39

6    MR. EVANS:  Correct, Your Honor.  And that's correct.

7    The important point I want to make here is that the

8  party -- potentially responsible party that operated the mine,

9  that owns the mine, and that has the documents that are the

10  target of this request are with Operadora, not Southern Copper      13:46:00

11  Corporation, two levels up, the American corporation.

12    THE COURT:  Well, I thought you hadn't done any

13  investigation to find out if you had those documents?

14    MR. EVANS:  I'm sorry, Your Honor?

15    THE COURT:  As I read your response, you haven't      13:46:18

16  looked to see if you have those documents.

17    MR. EVANS:  Well, I've made inquiry.  And I am

18  informed and believe that those documents are with the second

19  subsidiary that we've identified on this diagram.

20    THE COURT:  Well, I don't think anyone doubts those      13:46:33

21  documents are with a subsidiary, but I think there's also a

22  suggestion that they're with SCC.

23    MR. EVANS:  I think the suggestion, Your Honor,

24  respectfully, is that because SCC is the parent company, that

25  it would have control over the entity that has the documents.      13:46:47

UNITED STATES DISTRICT COURT

1    But that's not the same as actually being in possession of the

2    documents.

3            So, for example --

4            THE COURT:  Well, you just heard what Mr. Benoit

5    suggested the order be, that the documents be produced that          13:47:02

6    employees of SCC have access to.

7            Is that what you're talking about?  You're saying

8    employees wouldn't have access to those documents?

9            MR. EVANS:  No, they would have access, because -- you

10   know, at the right level, because this is a parent company         13:47:16

11   asking a subsidiary of a subsidiary to produce documents back

12   up to the parent for production in the United States.

13           I would -- I think it is reasonable to conclude that

14   that authority exists on the part of the parent to request

15   those documents from the subsidiary.  But that's quite             13:47:39

16   different than those documents being in the possession of the

17   parent.

18           THE COURT:  But you don't know if they have them or

19   not.

20           MR. EVANS:  I have inquired, and I believe that they        13:47:49

21   are not in the possession of the parent.

22           THE COURT:  Because you didn't -- you didn't indicate

23   that in your response.

24           MR. EVANS:  Not clearly, Your Honor.

25           THE COURT:  Now you have inquired.  Well, when did you      13:47:58

CV-16-1639-PHX-DLR – May 26, 2016

1    make that inquiry?

2             MR. EVANS:  I spoke to the general counsel of Grupo

3    Mexico just before I entered this courtroom at about 12:50 this

4    afternoon, just to be sure.

5             THE COURT:  Well, SCC is the entity that the documents      13:48:11

6    are being sought from, not Grupo Mexico.

7             MR. EVANS:  That is correct.  But I have checked at

8    the highest level to make sure that before I represent anything

9    to this Court I represent it accurately.  And what I am told is

10   that apart from very basic documents that are necessary to make      13:48:24

11   SCC filings, that all of the documents that are sought by this

12   action are with the operating companies in Mexico.

13             Let me, if I may, Your Honor --

14             THE COURT:  Yes.

15             MR. EVANS:  -- give you an example, a very typical      13:48:41

16   example of the types of documents that they're seeking.  And

17   this goes to the issue of burdensomeness.

18             THE COURT:  Well, you never responded to

19   burdensomeness, so I'm not sure we're going to have to take

20   that up now, because you had a chance to respond and give the      13:48:56

21   other side a chance to reply.

22             MR. EVANS:  Other than to say that it was burdensome.

23             THE COURT:  Well, yeah, you said that, but you didn't

24   give me any information as to why it was burdensome.

25             MR. EVANS:  Well, I would like to submit to you an      13:49:06

 1   oral argument for your review, Your Honor.

 2          THE COURT:  Okay.

 3          MR. EVANS:  The very request that was asked of

 4   Southern Copper Corporation, extremely broadly worded sweeping

 5   requests, request number 6 that they make, any documents                13:49:20

 6   relating to permits, authorizations or approvals for all

 7   activities at the BVC mine sought from the Mexican Government,

 8   whether or not ultimately received, and all communications with

 9   the Mexican Government regarding permits, authorizations or

10   approvals.                                                               13:49:43

11          That's the request being made to the parent

12   corporation regarding a company that owns and operates and

13   manages and controls the mine in Mexico.

14          Now, in the world of environmental liability, you're

15   going to have your operating company running the mine in         13:49:59

16   possession of the permits and the authorizations and the files

17   that were created for the purpose of getting governmental

18   authority to operate a mine like this.

19          You know --

20          THE COURT:  So let me just make sure.                             13:50:16

21          MR. EVANS:  Yes.

22          THE COURT:  Your argument is the breadth of the

23   request proves the burdensomeness?

24          MR. EVANS:  Yes.

25          THE COURT:  Is that what you're saying?                           13:50:23

1          MR. EVANS:  Yes, Your Honor.

2          THE COURT:  Okay.  Without having checked to see what

3    it would take to gather those, or if any of those even exist.

4          MR. EVANS:  Well, presumably this company Operadora

5    that operates a mine in Mexico is going to have some permits,          13:50:37

6    it's going to have some requests for permits, it's going to

7    have some authorizations and correspondence that goes with it.

8          THE COURT:  And it's the operation procedure there

9    that those permits are not shared with the parent?

10          MR. EVANS:  Well, I'm not representing that to the          13:50:52

11    Court.  But you would think, Your Honor, I mean, that the

12    operating permits of a particular industry that is separately

13    owned, separately controlled, separately managed, those permits

14    are going to be with that company.  There may be copies up at

15    the Southern Copper Corporation level, yes, indeed.  But this          13:51:11

16    is where the action is happening.  This is where the accident

17    occurred.  This is where the documents are stored.  This is

18    where they need to be stored because they are duty bound to

19    comply with Mexican law as it relates to their regulations.

20          THE COURT:  Well, I don't think anyone doubts that the          13:51:30

21    subsidiary operating the mine has those documents.  So that

22    doesn't mean a lot.

23          MR. EVANS:  If I may --

24          THE COURT:  So the question is, is does SCC have easy

25    access to those documents?  That's really what you're arguing,          13:51:41

1   isn't it?

2          MR. EVANS:  Well, what I am stating, Your Honor, is

3   that if the -- well, there's a lot going on here.  Let me see

4   if I can break it down.

5          There's a question here of whether the parent should          13:51:52

6   be required, apart from whether it could get these documents,

7   should be required to go to Mexico, get the documents and bring

8   them back to the United States when there is a procedure

9   available to the requesting party to gather those documents

10  from the Mexican company in Mexico.  And most importantly, to          13:52:11

11  abide by the rules and regulations that restrict or limit or

12  govern or oversee or examine the manner in which these

13  documents are acquired.

14         THE COURT:  So let me just back up.  What we heard

15  from counsel for the applicant, what he was asking for was the          13:52:34

16  order to be that the SCC production be of those documents that

17  SCC employees have ready access to.

18         Is it your argument that they would have ready access

19  to them at the subsidiary?  I mean, is that what you're arguing

20  against?          13:53:02

21         MR. EVANS:  Your Honor, no.  Respectfully, my argument

22  is not that there is a lack of access.  My argument is --

23         THE COURT:  Is your argument that there is access, you

24  just don't want to have them have to go to the length of

25  contacting their subsidiary to gather those, is that what your          13:53:18

1  argument is?

2       MR. EVANS:  If the Court would indulge me, the

3  argument is a little more policy oriented than that.

4       This is an effort to circumvent the rules and the

5  procedures that apply in our neighboring country Mexico.        13:53:35

6       THE COURT:  But that's --

7       MR. EVANS:  And it is an effort to get from the parent

8  what there is no evidence in the record they have even tried to

9  get using the processes in Mexico from the company that has

10 immediate possession and that needs that possession to operate   13:53:54

11 the mine.

12      So as to the issue of respect, Your Honor, if I may,

13 this -- one of the factors, this is an effort to circumvent a

14 process that they don't want to adhere to, that they don't want

15 to obey, by coming into the United States courts and asking a    13:54:10

16 United States court to order a parent to go to a subsidiary

17 which will go to a subsidiary to gather documents that are in

18 Mexico.  And there's something wrong with that process.

19      And the courts -- and in looking at the legislative

20 history and the courts that have examined this, all have         13:54:32

21 concern about that, Your Honor.  If I may --

22      THE COURT:  Well, let me just finish where we were.

23      We were talking about burdensomeness, and now we're

24 talking about efforts to circumvent.  Have you conceded that

25 it's not a burden to get these documents, if they wanted them    13:54:46

```
 1   they could get them?

 2           MR. EVANS:  Well, I am not conceding that, Your Honor,

 3   because --

 4           THE COURT:  Because you don't know what the burden is

 5   because you haven't investigated it.                            13:54:55

 6           MR. EVANS:  Well, we know that there's going to be

 7   cost and time and effort involved.

 8           THE COURT:  But how do we know that?  If it's all

 9   electronically stored, what do we know about the burden if you

10   haven't investigated it and come back and can tell me what it's  13:55:05

11   going to be?

12           MR. EVANS:  I need only look -- Your Honor, going to

13   that fourth factor, you know, I need only look at request

14   number 6 which I've read into the record here.

15           THE COURT:  But your --                                 13:55:17

16           MR. EVANS:  And I can tell you --

17           THE COURT:  -- argument is that the breadth proves the

18   burdensomeness.

19           MR. EVANS:  Yes.

20           THE COURT:  But we don't know -- it might be a push of  13:55:23

21   a button to gather the applicants -- the applications for the

22   licenses and things of that nature.

23           MR. EVANS:  I don't think that's going to happen,

24   Your Honor.

25           THE COURT:  I don't.  We don't know what it's going to  13:55:37
```

1    take because you haven't checked it out.

2          MR. EVANS:  Well, I do know, having represented this

3    company for over ten years now, that there is no button that

4    can be pushed that will spit out documents relating to permits

5    and authorization or approvals for all activities at the BVC        13:55:52

6    mine sought from the Mexican Government whether or not

7    ultimately received.  There's just no button that can be pushed

8    to do that.  This is a huge effort that will have -- that the

9    parent will have to undertake.

10         THE COURT:  You're making this argument without having      13:56:08

11   investigated what it's going to take, and your argument isn't

12   going to be enough.  You can't just come in here and argue

13   something without having some basis to make that argument.  You

14   haven't -- you've said in your response you haven't

15   investigated it.                                                    13:56:22

16         MR. EVANS:  Your Honor, the basis of my argument stems

17   from the wording of the requests themselves.

18         THE COURT:  That --

19         MR. EVANS:  And the Court has correctly, you know,

20   pointed out --                                                      13:56:36

21         THE COURT:  The burdensome argument is based on the

22   breadth of the request.

23         MR. EVANS:  Yes.

24         THE COURT:  Okay.  Let's talk --

25         MR. EVANS:  So if, for example, Your Honor, the              13:56:42

 1    request said, said give me everything, we wouldn't need to go

 2    investigate that to determine whether that's an overly

 3    burdensome request.  And we don't need, based upon the wording

 4    of these requests, to speculate that they will require

 5    significant time and effort and expense to comply with.                13:56:59

 6           Now there is an issue of duplicity here -- I'm sorry,

 7    that these requests are duplicative.  And the courts, we've

 8    cited them in our briefs, have found that when the documents

 9    are in the possession of a foreign subsidiary, and there is a

10    way for the applicant to get the documents from a foreign         13:57:19

11    subsidiary, even though the parent may have access to those

12    documents, that request would be duplicative and, therefore,

13    burdensome.  And on that basis courts have denied these types

14    of requests.

15           That's exactly what you have in front of you,              13:57:35

16    Your Honor.  You have a request of Southern Copper Corporation

17    to go down and get documents that are in the possession of a

18    subsidiary company.

19           THE COURT:  And there's a means to obtain them through

20    the Mexican procedures?                                           13:57:48

21           MR. EVANS:  And there is a means to obtain them,

22    Your Honor.  And there is no evidence before this Court --

23           THE COURT:  Let me just --

24           MR. EVANS:  -- that they have used that method.

25           THE COURT:  Just remind me, where is that set forth in     13:57:55

1    your response that there's a means to obtain these?

2         MR. EVANS:  Well, I can help you get there.  I can

3    begin by pointing out to you that on paragraph 14 of the

4    applicant's own declarations filed in reply, the applicant

5    states that they have obtained over 10,000 pages of documents      13:58:19

6    from governmental sources.  But nowhere in there --

7         And by the way, they have the burden, contrary to

8    what -- and I'll just cite it for the record, in *Godfrey,* 526

9    F. Supp. 417, the Court made clear that the petitioners have

10   the burden of proof to show that it's met the requirements        13:58:43

11   under Section 1782.

12        But the declaration submitted by the applicant,

13   Your Honor, acknowledges that they've already got thousands and

14   thousands of documents.  But nowhere in this declaration do

15   they meet their burden by saying, and we tried and failed, and    13:59:00

16   we applied and we were denied, and we requested and we were not

17   given the documents.

18        THE COURT:  And is that a requisite?

19        MR. EVANS:  I believe it is.  I believe one of the

20   factors that the Court considers, and that many of the courts     13:59:15

21   have considered in analyzing whether or not this -- a U.S.

22   company should be required to produce documents held by a

23   foreign subsidiary --

24        THE COURT:  So one of the requisites before I can

25   issue an order allowing this discovery to occur is that they      13:59:29

1   show that they've exhausted their efforts available to them in

2   Mexico to obtain the documents down there?

3           MR. EVANS:  That's not what I'm saying, Your Honor.

4   We know from the cases that they don't have to exhaust the

5   efforts.  But the Court, in exercising its discretion, can        13:59:46

6   consider what efforts were undertaken.

7           THE COURT:  Okay.

8           MR. EVANS:  And we submit, Your Honor, that the Court

9   should consider that they've done nothing.

10          Instead, I think it begins to really look to us like      13:59:58

11  an end run around the Mexican procedures, an end run around the

12  Mexican Government to come in and to ask a U.S. corporation to

13  go down and get what they haven't even asked for in Mexico.

14          THE COURT:  Well, let me ask you this:  Would you

15  object to producing documents that are already in the            14:00:17

16  possession of SCC that have been requested here?

17          MR. EVANS:  If that's the way the Court is leaning,

18  providing they're not privileged, and in an effort to meet and

19  confer with my colleague, I don't have a problem producing

20  those documents if they are in SCC's possession.                 14:00:33

21          But I do want to make clear that these requests are

22  extremely broad and violate all kinds of privileges, including

23  work product and attorney/client privilege.

24          But aside from that, the answer is yes, Your Honor.  I

25  mean, there's no one trying to hide the ball here, it's just a    14:00:55

1    matter of respecting the Mexican system that restricts the way

2    and what can be requested at this stage of the proceeding.

3           Now, my colleague has mentioned that he intends to add

4    or initiate the environmental action through his colleagues in

5    Mexico to add the subsidiaries as a party.  So he will                    14:01:15

6    certainly have an opportunity to get through the discovery

7    process there, and obeying the discovery process in Mexico, all

8    the documents to which they are entitled.

9           But again, this is very premature for him to come to

10   the United States court and ask for documents in a pre-filing            14:01:34

11   context.

12          As to the context itself, Your Honor, it is true that

13   there must be some prima facie showing, but it's not as onerous

14   as it has been represented to this Court, such that the Court

15   should take these extraordinary steps and order a U.S. company           14:01:54

16   to produce documents that are in the possession of a foreign

17   subsidiary.  Contrary to the -- you know, the case laws, in the

18   *Four Pillars* case, the *Grupo Unidos* case, and *Kreke* cases all

19   cite, including a Ninth Circuit case, which hopefully the Court

20   has seen -- and I'll quote from *Godfrey*, also in our briefs and        14:02:17

21   also on the list of cases, that, quote, the bulk of authority

22   in this Circuit holds that for purposes of a 1782(a) request a

23   witness cannot be compelled to produce documents located

24   outside the U.S.

25          That's not the rule, but that in applying the                     14:02:40

1   discretionary factors is what court after court after court

2   decides.  So this would be a very extraordinary case where this

3   Court would order a U.S. company to require a subsidiary, which

4   there has been some showing on the part of a declarant the

5   documents are believed to exist, to produce those documents          14:03:07

6   back up to the parent, notwithstanding burdensomeness,

7   notwithstanding the fact that it's duplicative, and

8   notwithstanding the fact that there are restrictions on the way

9   that these documents can be obtained in Mexico at this point,

10  and notwithstanding the fact that the applicant has not placed      14:03:25

11  any evidence before the Court that it tried and failed.

12            THE COURT:  Okay.

13            MR. EVANS:  So it would be extraordinary if this Court

14  exercised its discretion in applying the various factors in

15  *Avery* and ordered Southern Copper Corporation to go through all    14:03:44

16  of this effort to obtain these documents in a foreign

17  jurisdiction, to bring them back to the United States, and to

18  hand them over when they haven't even been sought in Mexico,

19  and when there hasn't even been a lawsuit filed in Mexico, and

20  when a party to that action which will ultimately be filed will     14:04:09

21  have to hand them over in the Mexican court and according to

22  Mexican procedures.

23            THE COURT:  Okay.  All right.  Thank you.

24            MR. EVANS:  Thank you, Your Honor.

25            THE COURT:  Mr. Benoit.                                    14:04:28

1          MR. BENOIT:  May I have an opportunity to rebut?

2          THE COURT:  Yes.

3          MR. BENOIT:  Your Honor, I just want to address two

4    points.  One is regarding the extraordinary nature of this.

5          THE COURT:  Before you do that, let me just see if I          14:04:45

6    can understand where you guys differ about what they're willing

7    to produce.

8          Mr. Evans just said that they're willing to produce

9    the documents held by SCC itself.  Is that something that's

10   not -- your production request was that they produce documents     14:05:03

11   available to SCC employees.  Is that different than what he's

12   agreed to?

13         MR. BENOIT:  I don't know.  I think they sound

14   different.  I would note that when Mr. Evans mentioned in

15   the -- he said the possession of SCC, and I do want to            14:05:19

16   emphasize that we're looking at the custody and control.  But

17   again going back to the accessibility issue, I think we look at

18   *Hallmark Corp* and *Bloomfield Investment Group*, those cases deal

19   with this question of electronically-stored information being

20   accessible in numerous places around the world, and the          14:05:36

21   location really being on a server that nobody knows.  I mean,

22   the question is what is the control and custody of that

23   documentation?

24         THE COURT:  So you're saying control could be

25   different than possession?                                        14:05:49

1    MR. BENOIT:  Yes, Your Honor, I would argue that.

2    THE COURT:  So you're saying that the order you would

3 like is the documents in the control of SCC employees.

4    MR. BENOIT:  Yes.  And as we mentioned earlier, the

5 documents that are accessible to SCC employees.                    14:06:05

6    THE COURT:  So that's different than control?

7    MR. BENOIT:  No, no, I would say it's the same.

8    THE COURT:  Okay.  So his -- I asked him about those

9 in the possession of SCC, but I guess you're saying the

10 standard you would like to be applied is not possession, it's    14:06:20

11 the control or access to.

12    MR. BENOIT:  Yes, Your Honor.  And the standard that's

13 set up in Federal Rule of Civil Procedure 26.

14    THE COURT:  And how would you define possession to be

15 different than control or access?                                  14:06:37

16    MR. BENOIT:  Well, I guess in terms of

17 electronically-stored information I don't know.  Because the

18 question of possession and location of actual physical

19 documents is a very different context than when we look at a

20 Rule 34 production and possession and control in that context.   14:06:54

21    So, I mean, it is labeled --

22    THE COURT:  Well, there's going to be SCC computers

23 and storage -- electronic storage, and then there's going to be

24 the electronic storage by its subsidiaries.

25    MR. BENOIT:  I don't think that's the case,             14:07:14

CV-16-1639-PHX-DLR — May 26, 2016

1    Your Honor.

2              THE COURT:  I don't know.  How do you envision the

3    material is being held?

4              MR. BENOIT:  Well, I envision the materials -- and

5    first of all, I think there's numerous subsidiaries, more than      14:07:23

6    just Operadora in Mexico.  The material being held in -- likely

7    in the same domain in a server for the entire company.  I'm not

8    sure --

9              THE COURT:  For the entire company and all the

10   subsidiaries, is that what you mean?  You say "entire company."     14:07:39

11             MR. BENOIT:  Right.  But, again, I guess

12   I'm -- without knowing that, without really knowing the

13   structure of the IT, I -- that's kind of why I want to go back

14   to the question of control.  Because I worry that the use of

15   the world "possession" might indicate something tangible in a       14:07:55

16   specific location, and I don't think that that's necessarily

17   what we're arguing.

18             THE COURT:  I assume we're talking about

19   electronically-held information.

20             MR. BENOIT:  That's what we've envisioned.                14:08:11

21             THE COURT:  Okay.  Mr. Evans, am I assuming wrong?

22   Are you talking about something different than

23   electronically-controlled information?

24             MR. EVANS:  No.  And the Court is correct to point out

25   that these systems are segregated.                                  14:08:22

1          And I would be willing to stipulate on behalf of

2    Southern Copper Corporation that, following a narrowing of the

3    scope of these requests to deal with privilege and overbreadth,

4    that Southern Copper Corporation would produce responsive

5    documents within its possession.                              14:08:43

6          THE COURT:  What do you mean by "possession"?

7          MR. EVANS:  It either has physical access to the

8    documents or electronic access within the Southern Copper

9    Corporation systems.  In other words, it's not going to be

10   required to reach down to any of the subsidiaries in Mexico.   14:08:58

11   It has four corners, and it's a U.S. publically-traded company,

12   so they're going to be respectful of those corporate

13   formalities.

14         THE COURT:  I think you've answered my questions.

15   Thank you.                                                     14:09:17

16         MR. EVANS:  Thank you.

17         THE COURT:  All right.  Go ahead.

18         MR. BENOIT:  Your Honor, I just kind of wanted to go

19   back to the question of how extraordinary this would be.  I

20   don't think that's the case.  In *Hallmark Corporation*,       14:09:25

21   *Bloomfield,* many of the *Chevron* cases which we cited, all of

22   them dealt with documents abroad, and including a case filed by

23   Grupo Mexico in the Northern District of Texas in the past year

24   seeking documentation abroad from a company with an office in

25   Dallas.                                                        14:09:43

CV-16-1639-PHX-DLR - May 26, 2016

 1           So this is not something that is out of the pale,

 2    particularly given the kind of global nature of

 3    electronically-stored information and the ease of access of

 4    that information.

 5           THE COURT:  Okay.  Anything else?                          14:09:56

 6           MR. BENOIT:  No, Your Honor.  Thank you.

 7           THE COURT:  All right.  Interesting issue.  Thank you.

 8    I'll take it under advisement.

 9           MR. EVANS:  Thank you.

10           MR. BENOIT:  Thank you, Your Honor.                        14:10:03

11        (Proceedings concluded at 2:10 p.m.)

12

13                          -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        C E R T I F I C A T E

5

6              I, CANDY L. POTTER, do hereby certify that I am duly

7     appointed and qualified to act as Official Court Reporter for

8     the United States District Court for the District of Arizona.

9              I FURTHER CERTIFY that the foregoing pages constitute

10    a full, true, and accurate transcript of all of that portion of

11    the proceedings contained herein, had in the above-entitled

12    cause on the date specified therein, and that said transcript

13    was prepared under my direction and control.

14             DATED at Phoenix, Arizona, this 14th day of June,

15    2016.

16

17

18                                 s/Candy L. Potter_____
19                                 Candy L. Potter, RMR, CRR

20

21

22

23

24

25