# EXHIBIT A



# THE LAW OFFICE OF
# LYNN COYLE
## PLLC

2515 N. Stanton St. | El Paso, Texas 79902

**LYNN COYLE, ESQ.**
lynn@coylefirm.com

**CHRISTOPHER BENOIT, ESQ.**
chris@coylefirm.com

Telephone
(915) 532-5544

Facsimile
(915) 532-5566

*Via First-Class U.S. Mail*

July 5, 2016

Gregory Evans and Keola Whittaker
MCGUIREWOODS LLP
Wells Fargo Center, South Tower
355 S. Grande Ave, Suite 4200
Los Angeles, CA 90071

RE: ***Discovery Application in United States Federal Court***

Counselors:

The purpose of this letter is to effectuate service of Applicants Requests for Production pursuant to Fed. R. Civ. P. 34 and the Court's Orders of June 10, 2016 and June 29, 2016.

We will be submitting a Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) shortly.

Best Regards,

CHRISTOPHER BENOIT
Attorney at Law

THE LAW OFFICE OF LYNN COYLE, P.L.L.C.
Christopher Benoit (pro hac vice)
Texas Bar. No. 24068653
chris@coylefirm.com
2515 N. Stanton Street
El Paso, Texas 79902
(915) 532-5544
(915) 532-5566 Facsimile

EARTHRIGHTS INTERNATIONAL
Marco Simons (pro hac vice)
D.C. Bar No. 492713
marco@earthrights.org
1612 K Street N.W., Suite 401
Washington, DC 20006
(202) 466-5188
(202) 466-5189 Facsimile

*Attorneys for Applicants Alberto Salcido Romo, Francisco Ramón Miranda, Francisca Garcia Enriquez, and Oscar Ramírez Gamez*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberto Salcido Romo, *et al.*, | **Case No. 2:16-cv-01639-DLR** |
| Applicants, | |
| vs. | **APPLICANTS' REQUEST FOR PRODUCTION OF DOCUMENTS** |
| Southern Copper Corporation., | |
| Respondent. | |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1782, Applicants hereby request that Southern Copper Corporation ("SCC") respond to this Request for Production of Documents and produce and permit Applicants to inspect and copy all responsive documents within 30 days. SCC is advised that the rules of discovery under Rules 26 and 34 of the Federal Rules of Civil Procedure are applicable to requests made pursuant to 28 U.S.C. § 1782, and of their obligations under Rule 26(e) to supplement responses. All documents shall be produced at the offices of The Law Office of Lynn Coyle, P.L.L.C., 2515 North Stanton Street, El Paso, Texas, 79930, and shall be produced as they were maintained in the ordinary course of business. Applicants reserve the right to request further discovery based on Respondent's production in response to these requests.

Please note that all words herein have their meaning in ordinary English usage. If there is any difficulty in understanding the scope or meaning of any word, please feel free to contact Applicants' attorneys for an explanation.

## INSTRUCTIONS

### 1. Electronically-stored Information

1.1. The Requested information items herein include electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container file.

1.2. Requested information items may come from all data sources such as locations or media used to house information items. Data sources include places, like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash

drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

## 2. Scope of Electronically Stored Information

2.1. SCC must act with reasonable diligence to identify and produce responsive, nonprivileged ESI under its care, in its custody, or subject to its control, notwithstanding its location, format, or medium.

2.2. SCC shall produce responsive, non-privileged files with the following extensions: ace, arc, arj, arx, bh, cal, cat, csv, dat, db, dbx, doc, docx, dot, dotm, dotx, dst, dstx, efx, email, eml, gnu, gra, gz, gzip, jar, lha, mbox, mbx, mdb, mde, mde, mpp, msg, nsf, ost, pdf, pnf, pot, potx, ppt, pptx, pst, pub, rar, rpt, rtf, shw, tar, taz, thmx, tif, tiff, txt, tz, wbk, wk4, wmf, wpd, wps, wri, xla, xlam, xlm, xls, xlsm, xlsx, xlt, xltx, z, zip.

2.3. The file types listed in 2.2 must be identified and considered in searching for potentially responsive ESI; however, this is not an exclusive list of all potentially responsive file types. Respondent is expected to apply its knowledge of information systems and applications used by employees when seeking to identify potentially responsive file types, as well as to make a reasonably diligent search for responsive file types not listed.

## 3. Load Files

3.1. Consistent with the provisions of these instructions, and with the Federal Rules of Civil Procedure, SCC shall produce responsive ESI to Petitioners in its *native electronic format,* and

when ESI is accompanied by a load file, SCC shall produce load files in the Concordance load file format. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii); Fed. R. Civ. P. 34, 2006 Amendment to Advisory Committee Notes (stating that the responding party is not free to convert electronically stored information from the form in which it is ordinarily maintained to a different form).

3.2. Required Fields: The load file shall include the following delimited fields:

    3.2.1. Identifier – UPI- The unique production identifier of the item;

    3.2.2. Source Name – NAME - The original name of the item or file when collected from the source custodian or system;

    3.2.3. MD5 Hash – MD5 - The MD5 hash value of the item as produced;

    3.2.4. Custodian – CUSTODIAN -The unique identifier for the original custodian or source system from which the item was collected;

    3.2.5. Source Path – SPATH -The fully qualified file path from root of the location from which the m was collected;

    3.2.6. Production Path – NATIVELINK -The file path to the item from the root of the production media;

    3.2.7. Modified Date – MODDATE -The last modified date of the item when collected from the source custodian or system;

    3.2.8. Modified Time – MODTIME - The last modified time of the item when collected from the source custodian or system; and

    3.2.9. UTC Offset – UTCOFF - The UTC/GMT offset of the item's modified date and time.

3.3. The following additional fields shall accompany production of e-mail messages:

   3.3.1. To – RECIPIENT – Addressee(s) of the message;

   3.3.2. From – FROM – The e-mail address of the person sending the message;

   3.3.3. CC – CC – Person(s) copied on the message;

   3.3.4. BCC – BCC – Person(s) blind copied on the message;

   3.3.5. Date Sent – DATESENT – date the message was sent;

   3.3.6. Time Sent – TIMESENT – time the message was sent;

   3.3.7. Subject – SUBJECT – Subject line of the message;

   3.3.8. Date Received – DATERCVD – date the message was received;

   3.3.9. Time Received – TIMERCVD – time the message was received;

   3.3.10. Attachments – ATTACHMENTID – The beginning UPI(s) of attachments, delimited by comma;

   3.3.11. Mail Folder Path – MAILPATH – the path of the message from the root of the mail folder; and

   3.3.12. Message ID – MESSAGEID – The Microsoft Outlook or similar unique message identifier.

3.4. The following additional fields shall accompany images of paper documents:

   3.4.1. Beginning Identifier – BEGNO – The beginning unique production identifier for the first page of the document;

   3.4.2. Ending Identifier – ENDNO – The ending unique production identifier for the first page of the document;

   3.4.3. Page Count – PGCOUNT – The total number of pages in the document;

3.4.4. Location – LOCATION – The source box or other location identifier needed to trace the document to its source.

**4. Procedure to Determine Whether Electronically Stored Documents are Readily Accessible to SCC's United States Employees**

4.1   Pursuant to the Court's Order of June 10, 2016 [Doc. 18], and in an effort to explain the ready accessibility of electronically stored documents to SCC's employees in the United States, Respondent will provide Applicants, with reasonable particularity, a description of the parameters of its search, the databases, email systems, or intranet systems from where it obtained the documentation produced, and why it considered documents produced to be readily accessible.

### DEFINITIONS:

Unless a contrary meaning appears in the text, the following definitions apply:

**And** includes the word **or** and vice-versa.

**Any** includes the word **all** and vice-versa.

**Buenavista del Cobre ("BVC") Mine** shall refer to the mining operations owned and operated by Buenavista del Cobre, S.A. de C.V. and Operadora de Minas e Instalaciones Mineras, S.A. de C.V. in the State of Sonora, Mexico, including any related processing, leaching, storage, or transportation plants or facilities.

**Communication(s)** as used herein shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium.

**Document** as used herein is a broadly inclusive term, referring to any and all written or other graphic matter, however produced, generated, or reproduced, of every kind and description, and to anything upon which sounds, pictures or electronic images are recorded, transferred, imprinted or depicted by photography, video, typewriting, handwriting, sound recording, or otherwise. Such terms refer to originals, copies where originals are unavailable, copies of originals which differ in any manner from the originals, and all drafts prepared in connection with such matter, including but not limited to the following: contracts, agreements, memoranda of understanding, charts, graphs, inventories, accounts, lists, transcripts, abstracts, tape recordings, video recordings, sound reproductions, summaries, files, pleadings, depositions, answers to requests for admissions, answers to interrogatories, file jackets, file covers, records, books, papers, correspondence, notes, electronic mail messages, agreements, statements, photographs, motion pictures, objects, microfilm, telegrams, telegraphs, telexes, telefaxes, facsimiles, copies, letters, memoranda, notations, scratch paper, minutes of directors or committee meetings, minutes of interviews, minutes of in-person or telephonic conversations or communications, interoffice communications, shareholder reports, press releases, reports, studies, audits, reviews, assessments, statistics, stenographic notebooks, calendars, appointment books, diaries, time sheets, logs, computer disks, computer programs, databases, computer printouts, data processing cards, data processing tapes, or papers similar to any of the foregoing however denominated by the responding party, regardless of whether it was prepared in whole or in part by SCC.

**Including** shall mean "including but not limited to."

**SCC** shall include the United States-based corporation named Southern Copper

7

Corporation and shall not include any of SCC's subsidiary corporations, unless otherwise stated.

The **Spill** shall refer to spill of copper sulfate solution at BVC mine on August 6, 2014, which is described, among other places, in SCC's SEC Form 10-K for the fiscal year ended December 31, 2014.

**Mexican Government** shall refer to any ministry, department, agency, and/or official of the Government of Mexico or any local subdivision thereof.

**Ejido** shall refer to the community property classification of property ownership recognized in Article 27 of the Mexican Political Constitution.

**Person** shall include any individual, corporate entity, or business.

**Policy** shall refer to any written or unwritten, formal or informal, policies, procedures, rules, regulations, guidelines and contracts.

**Possession, Custody or Control** shall include those documents in the possession, custody or control of SCC provided that, (1) electronically stored information will be limited only to documents that are readily accessible to any SCC employee present in the United States of America, and (2) non-electronically stored information will be limited only to documents that are physically located in the United States of America.

**Related to and Relating to** shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, describing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

**SX-EW III Plant** shall mean the facility of that name in the BVC Mine referred to,

8

*inter alia*, in SCC's SEC Form 10-K disclosure for the fiscal year ended December 31, 2014.

**Tinajas 1 and Tinajas 2** shall refer to the leaching ponds for the SX-EW III Plant that ere the originating point of the Spill.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Please produce the following documents, in your possession, custody or control, for the period from August 6, 2010 to the present. This includes all policies, procedures, rules, guidelines, suggestions, contracts, agreements or standards that were operative on August 6, 2014, irrespective of when they were drafted:

1. All documents relating to a Dangerous Waste Management Plan (Plan de Manejo de Residuos de la Industria Minero-Metalúrgica) for BVC, including any communications with the Mexican Government or any Person regarding such a Plan. This request includes, but is not limited to, any studies connected to a Dangerous Waste Management Plan, and all drafts of any Dangerous Waste Management Plan.

2. All documents relating to an Environmental Remediation Plan (Programa de Remediación Ambiental) to address the effects of the Spill, including any communications with the Mexican Government or any Person regarding such a Plan.

3. All documents relating to water quality testing in areas affected by the Spill, including any communications with the Mexican Government or any Person regarding such testing.

4. All documents relating to consultation that SCC or its subsidiaries had with communities or municipal leaders within 200 kilometers of the BVC Mine regarding its plans to construct the SX-EW III Plant.

5. Any documents related to a trust fund (fideicomiso) established with the purpose of supporting remedial action and providing compensation to those adversely affected by the Spill.[1] This Request includes, but is not limited to, information regarding: (1) any distribution of funds from the trust fund; (2) communications with the Mexican Government or any Person regarding the trust fund; (3) communications with communities in the Sonora River basin or civil society groups; (4) the medical unit located in Ures, Sonora; (5) remediation plans created as a part of the trust fund; (6) measurements of water, sediments and soil that were used as part of the creation of the trust fund; and (7) decisions regarding which communities or political entities should receive fund distributions and the reasons underlying these decisions.

6. Any documents relating to permits, authorizations, or approvals for activities at the BVC Mine sought from the Mexican Government, whether or not ultimately received, including any communications with the Mexican Government or any Person regarding such permits, authorizations, or approvals. This Request is limited to the period beginning in 2011 to the present.

7. Any documents relating to contracts, licenses, easements, or other authorizations obtained from any local ejido for the benefit of the operation of the BVC Mine.

8. Any documents relating to environmental or ecological testing, evaluations, assessments, or analyses of the BVC Mine or any area within a 200 kilometer radius of the BVC Mine, including any communications with the Mexican Government or any Person regarding such evaluations or assessments.

---

[1] The trust fund is described, among other places, in SCC's SEC Form 10-K for the fiscal year ended December 31, 2014.

9. Any documents relating to investigations, evaluations, assessments, or analyses of the cause or causes of the Spill, including any communications with the Mexican Government or any Person regarding such investigations, evaluations, or analyses.

10. Any documents relating to investigations, evaluations, assessments, or analyses of environmental or ecological damage caused by the Spill, including any communications with the Mexican Government or any Person regarding such investigations, evaluations, or analyses.

11. Any documents, including but not limited to, correspondence or meeting minutes of SCC, regarding permits, construction, and operation of the Tinajas I and II leaching ponds located at the SX-EW III plant in the BVC mine.

12. Any documents, including but not limited to, correspondence, meeting minutes, or studies conducted by SCC related to environmental or ecological testing, evaluations, assessments, or analyses of the land upon which Tinajas I and II leaching ponds located at the SX-EW III plant in the BVC mine were constructed. This request is limited to the period January 1, 2011 to August 6, 2014.

13. Any documents, including but not limited to, communication or reports relating to a risk analysis conducted by SCC or its subsidiaries prior to the August 6, 2014 Spill of potential risks resulting from the SX-EW III Plant construction or the Tinajas I and II leaching pond. "Risk analysis" for purposes of this Request means: (1) analysis of liability resulting from operation of the Plant and Tinajas I and II; and (2) insurance products or contingency plans for insurance related to construction and operation of the Plant and Tinajas I and II.

**RESPECTFULLY SUBMITTED** on the 5th day of **July, 2016.**

_(signature)_

Christopher Benoit, Esq.
THE LAW OFFICE OF LYNN COYLE, PLLC
Marco Simons, Esq.
EARTHRIGHTS INTERNATIONAL

### CERTIFICATE OF SERVICE

I hereby certify that, on the **5th** day of **July, 2016**, I electronically transmitted the attached document to counsel for Respondent, Gregory Evans and Keola Whittaker, via first class mail.

_(signature)_

Christopher Benoit